Steven TEITELBAUM, Cherie Teitelbaum, Laurence Brasler, Janet Brasler, Jan Bronson, Marlene Bronson, Nicholas Buzolich, Gail Buzolich, Joel Garfield, Laura Garfield, David Serber, Debra Warren, Douglas Marks, Paul Marks, Debra Marks, Isadore Jachnuk, Andrea Jachnuk, Lawrence Bautzer, Claudia Bautzer, Steven Serber, Robert Wilson, Paul Wojdak, Steven Tierney, Betty Tierney, Michael Moline, Roger Houfek, Steven C. Teitelbaum Profit Sharing Trust/Plan, Steven C. Teitelbaum Pension/Money Purchase Plan, Conejo Valley Stamp & Coin, Inc., and Richard J. Van Lannen Insurance Agency, Inc., Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, and Does 1 through 100, inclusive, Defendants.

No. CV–S–95–895–PMP (RLH).

United States District Court, D. Nevada.

March 29, 1996.

David T. Stowell, Jonathan I. Reich, James D. Vaughn, De Castro, West & Chodorow, Inc., Los Angeles, CA, Thomas D. Sutherland, and Lawrence E. Mittin, Barker, Gillock, Koning & Brown, Las Vegas, NV, for plaintiffs.

Steven Goldstein, U.S. Department of Housing & Urban Development, Washington, DC and James S. Savett, Asst. U.S. Atty., Las Vegas, NV, for defendants.

## ORDER

PRO, District Judge.

Presently before this Court is the Defendants' Motion to Dismiss (# 10), filed November 16, 1995. Plaintiffs filed an Opposition to Defendants' Motion to Dismiss concurrently with their First Amended Complaint (# 13) on December 18, 1995. On this date, Plaintiffs also filed a Request For Jury Trial (# 12). Defendants filed a Reply, a Motion to Dismiss Plaintiffs' First Amended Complaint and a Motion to Strike Jury Demand (# 21) on January 26, 1996. Plaintiffs filed an Opposition to Defendants' Motion to Dismiss the First Amended Complaint (# 22) on February 12, 1996. Defendants filed their Reply on March 7, 1996.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This action began on September 18, 1995, when Plaintiffs filed a Complaint against Defendants, U.S. Department of Housing and Urban Development ("HUD") for failing to acknowledge or accept terms of an alleged oral agreement made by a HUD employee. Plaintiffs' Complaint alleges fraud and breach of oral contract and seeks reformation of contract, injunctive and declaratory relief.

Plaintiffs are the owners, as tenants-in-common, of two residential apartment complexes known as the Racquet Club Apartments and the Chaparral Apartments, both located in Las Vegas, Nevada. Both properties are encumbered by mortgages held by HUD. The loans are presently in default.

According to Plaintiffs, a HUD agent, David Ewing ("Ewing"), entered into an oral agreement with Plaintiffs regarding the defaulted loans, modifying the terms of the

mortgage. Pursuant to this alleged agreement, Plaintiffs used the monthly mortgage payments to rehabilitate and improve both properties instead of paying the mortgage loans. Plaintiffs allege that Ewing also assured them that if the loans were to be sold, Plaintiffs would have the right of first refusal to purchase the loans at a thirty to forty percent discount. Plaintiffs further contend that HUD was to later enter into a workout agreement embodying the terms of the oral agreement made by Ewing.

HUD rejected a subsequent workout agreement containing the terms of the alleged oral agreement. HUD sold the mortgage loan secured by the Racquet Club Apartments in an auction sale on September 18–19, 1995. That sale has not been finally closed. HUD also plans to sell the Chaparral loan in an upcoming mortgage loan sale.

Plaintiffs allege that HUD breached oral agreements made by Ewing by failing to modify each of the loans to provide forbearance from foreclosure, loan restructuring, and a "first right" to buy the mortgage at a discounted price. In addition, Plaintiffs allege that in reliance upon Ewing's representations, they did not pursue alternative financing options. Plaintiffs contend that the purchase of each loan should be subject to all of the terms and modifications made by Ewing.

Plaintiffs seek the following remedies for breach of the alleged oral agreements: (1) reformation of the existing loan documents relating to those mortgages; (2) damages for breach of oral contracts; (3) injunctive relief; and (4) declaratory relief.

HUD filed Motions to Dismiss Plaintiffs' original and the First Amended Complaint pursuant to Fed Rules of Civil Procedure, Rule 12(b)(1) and (6).

## II. *JURISDICTION*

To sue the United States, Plaintiffs must establish that this Court has subject matter jurisdiction by demonstrating both federal question under 28 U.S.C. § 1331 and a waiver of sovereign immunity. *North Side Lumber Co. v. Block,* 753 F.2d 1482, 1484 & n. 3. (9th Cir), *cert. denied,* 474 U.S. 919, 106 S.Ct.

248, 88 L.Ed.2d 256 (1985); *Marcus Garvey Square, Inc. v. Winston Burnett Const. Co.,* 595 F.2d 1126, 1131 (9th Cir.1979).

■ Federal question jurisdiction exists only for "civil actions arising under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331. Even where a case is contractual in nature, the presence of issues requiring the interpretation of federal law and regulation necessarily give rise to a federal question. *Katz v. Cisneros,* 16 F.3d 1204, 1207 (Fed.Cir.1994). As a result, this Court has federal question jurisdiction under § 1331.

Plaintiffs must also establish a valid waiver of sovereign immunity. Plaintiffs contend that their claims are permissible challenges to agency action under the sovereign immunity waiver contained in the Administrative Procedure Act ("APA"), at 5 U.S.C. § 702, and the National Housing Act ("NHA"), at 12 U.S.C. § 1702.

### A. Waiver of Immunity Under the APA

Section 702 of the APA creates no private right of action, but is a broad consent to suit by the federal government in cases where the relief sought is for non-monetary damages.

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed....

5 U.S.C. § 702 (1994). The APA, however, does not authorize judicial review if another statute provides jurisdiction. Specifically, the APA provides that "[n]othing herein ... confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702 (1994).

HUD argues that the nature of Plaintiffs' claims are contractual, thus, the Tucker Act "impliedly forbids" relief. Under the Tucker

Act, generally the Court of Federal Claims, not the District Court, has exclusive jurisdiction for contract actions against the United States. *Marcus Garvey Square v. Winston Burnett Const.*, 595 F.2d 1126, 1132 (9th Cir.1979). The Tucker Act provides that:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution or and Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).[1]

■ The Court finds that Plaintiffs' claims fall within the ambit of the Tucker Act. Where a plaintiff's claims are concerned only with the rights created within the contractual relationship and has nothing to do with duties that arise independently of the contract, then the claim is founded upon a contract and within the Tucker Act, subject to its restrictions and relief. *North Star Alaska v. U.S.*, 14 F.3d 36, 37 (9th Cir.1994) (*"North Star II"*). Counts III and IV of Plaintiffs' Amended Complaint which allege breach of oral contract and Counts I and II which seek reformation, are clearly based upon the alleged oral contractual agreement itself and cannot be adjudicated by this Court pursuant to the Tucker Act. *Id.* at 37.

■ Plaintiffs contend that their claims are equitable in nature and that the APA provides a waiver of sovereign immunity. Plaintiffs are correct is asserting that sovereign immunity is waived under the APA where the action in question is seeking relief other than money damages. *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). However, jurisdiction of this Court does not turn solely on the equita-

ble nature of Plaintiffs' claims but on whether the actions seeking equitable relief are really contract claims or are claims based on the laws or Constitution of the United States. *North Star II*, 14 F.3d at 37. The ultimate question, then, is whether Plaintiffs' claims are "contractually or statutorily basis." *Id.*

Plaintiffs do not argue that their claims are based on statutory violations. However, the claims are arguably based on statute in that Plaintiffs contend that sovereign immunity is waived pursuant to the APA at 5 U.S.C. § 702 and the NHA, at 12 U.S.C. § 1702. Nonetheless, Plaintiffs may not circumvent jurisdiction of the Court of Federal Claims simply by labeling their contract claims as statutory violations. "Regardless of the characterization of the case … we look to the true nature of the action in determining the existence or not of jurisdiction." *Katz*, 16 F.3d at 1207.

■ The Tucker Act is a statute which waives sovereign immunity and "impliedly forbids" equitable or declaratory relief against the government on contract claims. *North Star Alaska v. U.S.*, 9 F.3d 1430, 1432 (9th Cir.1993), (*"North Star I"*). Thus, when suing the government on a contract claim in the District Court, the Tucker Act permits only claims for equitable relief which rests at bottom on statutory rights. *Id.* (quoting *North Side Lumber*, 753 F.2d at 1485.)

■ An exception to this rule has been carved out to allow the District Court to grant equitable relief for claims relating to a contract where the contractual issues are only incidental to statutory questions. *See Laguna Hermosa Corp. v. Martin*, 643 F.2d 1376, 1379 (9th Cir.1981); *Rowe v. United States*, 633 F.2d 799, 802 (9th Cir.1980), *cert. denied*, 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 (1981).[2] This exception, however, has been narrowly construed to stand for

---

1. Under the "Little Tucker Act," the District Court has concurrent jurisdiction with the Court of Federal claims for actions not exceeding $10,000. 28 U.S.C. § 1346(a)(2).

2. In *Laguna Hermosa* the Court held that the Tucker Act did not forbid the District Court from issuing a declaratory judgment for purposes of determining whether the government's refusal to

honor the purported contract was itself a violation of federal statute. 643 F.2d at 1379. Similarly, in *Rowe*, the Court held that the district Court could issue a declaratory judgment concerning whether the plaintiffs had a valid existing contract right with the government, for the purposes of the Alaska Native Claims Settlement Act. 633 F.2d at 801.

the proposition that where a contract-related claim rests at the bottom on statutory rights, the District Court can declare the existence of contract rights, but cannot inquire into the content of the parties' rights. *See North Side Lumber* 753 F.2d at 1485–86.

Here Plaintiffs' contract-related equitable claims are not incidental to a statutory question. Rather Counts V and VI, which seek injunctive relief and Counts VII and VIII, which seek declaratory relief, are based on an alleged oral agreement. These claims are sought in the performance of a contract, not in the judicial interpretation of a federal regulation. They do not contain any reference to enforcing the contract pursuant to the statutory mandate or assert that HUD has failed to comply with a regulation or statute.

Plaintiffs' Complaint is couched in terms of breach of contract. Plaintiffs essentially seek reformation, injunction, and a declaration that the parties entered into a binding agreement that of which HUD has breached. To the extent that Plaintiffs' claims aver a breach of contract, the Federal Claims Court has jurisdiction to look into the terms of the contract to reach the merits of the case. *Brighton Village Assoc. v. U.S.*, 31 Fed.Cl. 324, 328 (1994). The APA does not waive sovereign immunity for contract based claims seeking equitable relief. *North Star II*, 14 F.3d 36, 38 (9th Cir.1994).

This Court is mindful of the fact that the Court of Federal Claims does not provide Plaintiffs with an alternative forum for equitable relief. *Bowen v. Massachusetts*, 487 U.S. 879, 901, 108 S.Ct. 2722, 2735–36, 101 L.Ed.2d 749 (1988). However, the Tucker Act does not authorize the District Court to grant declaratory or equitable relief against the United States. *See Price v. U.S. General Serv. Admin.*, 894 F.2d 323, 324 (9th Cir. 1990). Moreover, this Court is bound by the decision of *North Star II* which rejected the precise argument that "the district court cannot refuse jurisdiction if there is no alternative forum available to hear North Star's claim." *North Star II*, 14 F.3d at 38.

Accordingly, by virtue of section 702 of the APA, the APA does not provides a waiver and appropriate forum for Plaintiffs' claims.

Jurisdiction in the Court of Federal Claims vitiates the power of the APA over Plaintiffs' Amended Complaint pursuant to the Tucker Act.

**B.  Waiver of Immunity Under the NHA**

■ Where there is sovereign immunity separate from the Tucker Act, an action against a federal agency may be commenced in District Court under 28 U.S.C. 1331. Plaintiffs' Amended Complaint alleges jurisdiction under 12 U.S.C. § 1702 of the NHA. The final sentence of the NHA, provides that "[t]he Secretary [of HUD] shall, in carrying out the provisions of this subchapter and subchapters II, III, V, VI, VII, VIII, X, IX–A, and IX–B, of this chapter, be authorized in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal." 12 U.S.C. § 1702.

Plaintiffs contend that the sue and-and-be-sued clause contained in the National Housing Act, allows the Secretary of HUD to be sued in this matter. HUD, however, contends that because Ewing's actions were in contravention of the Act itself, the NHA does not provide a waiver of sovereign immunity.

The power given in NHA to sue the Secretary applies only to activities of the Secretary "in carrying out the provisions" of the designated subchapters. Thus the Secretary's authority to sue and be sued relate only to his official functions. *See F.H.A. v. Burr*, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940). Therefore, Plaintiffs' claims can succeed if, liberally viewed, they relate to one or more of the subsections under which the Secretary may sue or be sued. Viewed in perspective, the alleged oral agreement entered into by Ewing falls clearly outside of the consent to suit.

The purpose of the National Housing Act is to promote the construction and purchase of residential housing by creating an extensive system of insuring home mortgages. Each of the ten subchapters under which the Secretary may sue or be sued promotes this basic scheme. None of these sections suggests a relationship between the Secretary's duties and the right to orally modify a mortgage loan agreement. Plaintiffs' Amended

Complaint simply stretches the NHA's waiver of sovereign immunity beyond its purpose.

The NHA does not give the Secretary authority to orally modify the terms of a mortgage loan. In fact, the Act specifically provides that "[t]he Secretary shall not consent to any request for an extension of the time for curing a default under any mortgage covering multifamily housing ... or for a modification of the terms of such mortgage, except in conformity with the regulations prescribed by the Secretary." 12 U.S.C. § 1715z–4 (1994). Furthermore, the regulations prescribed by the Secretary in accordance with § 1715z–4 require all mortgage modifications be made pursuant to the written approval of the Federal Housing Commissioner. *See* 24 C.F.R. § 221.761(a)(2). Thus, the alleged oral agreement by Ewing to modify Plaintiffs' mortgage loans was not proscribed by the Act and could not have been done in carrying out any provisions of the Act.

Accordingly, Plaintiffs' Amended Complaint which alleges that there was a valid oral mortgage modification does not relate to anything done in carrying out responsibilities of the NHA and is not sufficient to waive sovereign immunity.

IT IS THEREFORE ORDERED THAT Defendant's Motions to Dismiss (# 10 and # 21) are Granted.